IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| AUTO-OWNERS MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 3:24-cv-05001-MDH |
| BEVERLY GRANGER, | ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court are the parties' cross motions for summary judgment. For reasons herein, Plaintiff's motion for summary judgment is **GRANTED**, while Defendant's is **DENIED**. Summary judgment is entered in favor of Plaintiff.

## BACKGROUND

This case generally concerns interpretation of policy language related to an underinsured motorist provision of Defendant's auto insurance. Defendant and her husband, Randy Granger, are each named insureds on policy 53-233-262-00 ("the Policy"), issued by Plaintiff, effective between February 17, 2021 and February 17, 2022. Randy Granger was injured in a vehicle collision with another driver later determined to be underinsured on or about May 3, 2021. Plaintiff paid Randy Granger $250,000 in response to Mr. Granger's underinsured motorist claim under the Policy. Defendant was not directly involved in the collision that resulted in Mr. Granger's injuries. Defendant asserted a separate loss of consortium claim with Plaintiff, stemming from Mr. Granger's injuries.

1

Plaintiff denied Defendant's claim, contending any loss of consortium claim from Plaintiff was subject to the same $250,000 each-person limit applicable to Mr. Granger's underinsured motorist claim. In other words, Plaintiff contends because Mr. Granger already received $250,000 under the underinsured motorist provision and because the Policy's underinsured motorist provision has a $250,000 each-person limit, the maximum payout under the Policy was reached in Plaintiff's payment to Mr. Granger. Plaintiff filed the present action, seeking declaratory judgment. Defendant counterclaimed, alleging breach of contract. The parties agree there is no material factual dispute. The central issue, as this Court sees it, is whether the relevant policy language unambiguously mandates that Defendant's loss of consortium claim and Mr. Granger's underinsured motorist claim are subject to a single $250,000 payout limit.

## STANDARD OF REVIEW

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

# ANALYSIS

The relevant policy language is as follows:

SECTION I – DEFINITIONS

…

12. You or your means the first named insured shown in the Declarations and if an individual, your spouse who resides in the same household.

AUTOMOBILE DECLARATIONS

Randy Granger
Beverly Granger
***

| COVERAGES | LIMITS | PREMIUM |
|---|---|---|
| … | | |
| Underinsured Motorist | $250,000 ea pers/$500,000 ea occ | $110.55 |

Missouri UNDERINSURED MOTORIST COVERAGE Automobile Policy

1.DEFINITIONS
…
C. Underinsured automobile means an automobile to which a bodily injury liability bond or liability insurance policy applies at the time of the occurrence:

(1) with limits of liability at least equal to or greater than the limits required by the Motor Vehicle Financial Responsibility Law of Missouri; and

(2) such limits of liability are less than those stated in the Declarations for Underinsured Motorist Coverage.

2.COVERAGE
***

b. Subject to the limitations and reductions on coverage set forth in SECTION 4. LIMIT OF LIABILITY, we will pay compensatory damages, including but not limited to loss of consortium, that any person is legally entitled to recover from the owner or operator of an underinsured automobile for bodily injury sustained by an injured person while occupying an automobile that is covered by SECTION II – LIABILITY COVERAGE of the policy.

c. This coverage is extended to you, if an individual as follows:

(1) Subject to the limitations and reductions on coverage set forth in SECTION 4. LIMIT OF LIABILITY; we will pay compensatory damages, including but not limited to loss of consortium, you are legally entitled to recover from the owner or operator of any underinsured automobile for bodily injury you sustain:

(a) when you are not occupying an automobile that is covered by SECTION II – LIABILITY COVERAGE of the policy; or

(b) when occupying an automobile you do not own which is not covered by SECTION II – LIABILITY COVERAGE of the policy.

(2) The coverage extended in 2.c.(1) above is also afforded to a relative who does not own an automobile.

d. There is no coverage under this endorsement until the limits of liability of all bodily injury liability bonds and liability insurance policies applying to the underinsured automobile have been exhausted by payment of judgment or settlements.

\*\*\*

4. LIMIT OF LIABILITY

a. The Limits of Liability stated in the Declarations for Underinsured Motorist Coverage are for reference purposes only. Our duty to pay Underinsured Motorist Coverage is the difference between the Limits of Liability for this coverage and the limitations and reductions on this coverage set forth in 4. LIMIT OF LIABILITY, b. through e. shown below. Under no circumstances do we have a duty to pay you or any person entitled to Underinsured Motorist Coverage under this policy the entire Limits of Liability stated in the Declarations for this coverage.

b. Subject to the Limits of Liability stated in the Declarations for Underinsured Motorist Coverage and paragraph 4.a. above, our payment for Underinsured Motorist Coverage shall not exceed the lowest of:

(1) the amount by which the Underinsured Motorist Coverage Limits of Liability stated in the Declarations exceed the total limits of all bodily injury liability bonds and liability insurance policies available to the owner or operator of the underinsured automobile; or

(2) the amount by which compensatory damages, including but not limited to loss of consortium, because of bodily injury exceed the total limits of all bodily injury liability bonds and liability insurance policies available to the owner or operator of the underinsured automobile.

…

d. Our payment of Underinsured Motorist Coverage shall not be increased regardless of:

…

(3) The number of claims made or suits brought; . . .

THIS MEANS THAT NO STACKING OR AGGREGATION OF THE UNDERINSURED MOTORIST COVERAGE SHALL BE ALLOWED BY THIS POLICY IN ANY EVENT.

\*\*\*

From Plaintiff's perspective, Defendant's loss of consortium claim is an inseparable derivative of Mr. Granger's underinsured motorist claim. In support, Plaintiff cites paragraph C under the "Coverage" section of the policy, which dictates that, "we will pay compensatory damages, including but not limited to loss of consortium, you are legally entitled to recover from the owner or operator of any underinsured automobile for bodily injury you sustain…". Plaintiff also emphasizes that the definitions section of the Policy explicitly defines "you" and "your" to mean "the first named insured shown in the Declarations and if an individual, your spouse who resides in the same household." Applying this particular definition to the "Coverage" section, Plaintiff contends, shows that any loss of consortium necessarily flows from an underlying injury claim and cannot stand alone. Plaintiff argues a footnote in a 1975 Missouri Supreme Court case reflects "controlling" precedent "dispos[ing] of the operative legal issue nearly five decades ago." (Doc. 15 at 10). *See U.S. Fid. & Guar. Co. v. Safeco Ins. Co. of Am.*, 522 S.W.2d 809, 821 (Mo.

1975) (finding the two policies at issue define bodily injury to include all injuries, including "loss of services," as flowing from a single person's injuries). Plaintiff fails, however, to properly show the relevance of this holding, given the Supreme Court's language explicitly deals with interpretation of two policies at issue in that case, not principles of contract interpretation more generally.

Defendant contends, "plaintiff is simply wrong" because the phrase "not limited to" in the Policy's "Coverage" section, "clearly indicates that there are two separate claims that the insureds can have, one arising out of bodily injury suffered by the insured, and the other for loss of consortium arising out of bodily injury to the other insured." (Doc. 21 at 15-16). Defendant cites multiple cases purporting to establish a loss of consortium claim as a separate cause of action from personal injury claims in tort. While this is of course true in a basic legal sense, each case Defendant cites is rather inapposite to the present matter, which strictly concerns the meaning of the language in the policy at issue. Defendant emphasizes that both Defendant as well as Mr. Granger are, separately, named insureds and therefore must be entitled to separate claims and payout limits. Alternatively, Defendant contends, this Court should find the Policy to be ambiguous, which would, under applicable Missouri law, require a finding in favor of coverage for Defendant. *See Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. 1992) ("ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words" and requires a finding in favor of the insured).

Ultimately, this Court finds that the Policy unambiguously provides that Defendant's loss of consortium claim and Mr. Granger's underinsured motorist claim are subject to a single $250,000 payout limit. The most instructive portions of the Policy are the initial definition of "you" and "your" as well as the subsection titled "Coverage" under the underinsured motorist provision.

The Policy defines "you" and "your" to mean "the first named insured shown in the Declarations and if an individual, your spouse who resides in the same household." Here, Randy Granger is "the first named insured shown in the Declarations." Randy Granger is an individual whose spouse, Defendant, resides in the same household with Mr. Granger. (Doc. 4 at ¶ 5). Though perhaps counterintuitive, because of the way the Policy defines "you" and "your," it proves inconsequential, for the very narrow interpretative issue in this case, that Defendant, like Mr. Granger, is a named insured. Because "you" and "your" refer to the first named insured, and, *crucially*, in the event a named insured is an individual, that individual's spouse living in the same household, it necessarily follows that any reference to "you" and "your" within the Policy refers to both Defendant and Mr. Granger simultaneously. Applying this understanding to the underinsured motorist's "Coverage" provision yields the following.

> Subject to the limitations and reductions on coverage set forth in SECTION 4. LIMIT OF LIABILITY; we will pay compensatory damages, including but not limited to loss of consortium, [Randy Granger and Beverly Granger] are legally entitled to recover from the owner or operator of any underinsured automobile for bodily injury [Randy Granger and Beverly Granger] sustain…

Read accordingly, it proves sufficiently plain that the language is unambiguous and contemplates that Defendant's loss of consortium claim necessarily and inseparably follows from Mr. Granger's personal injury under the underinsured motorist provision. The two claims are inseparable under the Policy. These claims—the underlying personal injury/underinsured motorist and the loss of consortium—are subject to a single payout of $250,000 under the Policy's underinsured motorist provision.

Defendant is correct that, in the hypothetical event that the policy included several named insureds, some unmarried, it is not clear what rights these hypothetical named insureds would have under the policy. While this argument would be compelling, likely dispositive, if Plaintiff were a

7

subsequent named insured unmarried to Mr. Granger, that is not the factual scenario involved in this case. Importantly, this hypothetical reasoning may not play a part in the narrow interpretative issue in the present matter, as it remains altogether unclear whether Plaintiff would have ever issued a policy like this, with its rather confusing definition of "you" and "your," to multiple named insureds. Indeed, the narrow interpretative issue in this case is whether the particular personal injury/underinsured motorist and loss of consortium claims raised by Defendant and Mr. Granger are subject to a single payout limit of $250,000 under the language of the Policy's underinsured motorist provision. On that narrow issue, this Court finds the Policy unambiguously subjects these claims to a single payout limit.[1]

## CONCLUSION

For foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED**, while Defendant's is **DENIED**. Summary judgment is entered in favor of Plaintiff.

**IT IS SO ORDERED**.

DATED: July 23, 2024         */s/ Douglas Harpool*
                             **DOUGLAS HARPOOL**
                             **UNITED STATES DISTRICT JUDGE**

---

[1] The finding that the Policy's language at issue is not legally ambiguous is altogether separate from the issue of whether the language is confusing. Doubtlessly, the language is confusing and Plaintiff would do well to amend the provisions at issue to more closely reflect language found to be unambiguous in some of the cases Plaintiff cites. *See, e.g., Killpack v. Farm Bureau Town & Country Ins. Co.*, 861 S.W.2d 608, 613 (Mo. Ct. App. 1993); *Peters v. Farmers Ins. Co.*, 726 S.W.2d 749, 750 (Mo. 1987).